(Superior Court of Cincinnati.)
General Term.

## THE CARTHAGE WHEEL COMPANY v. PATRICK J. KELLY.

(1). Unless the writing itself sets out a contract for one year, a mere continuance under it after the expiration of the year, can not give to it a provision which it lacks. To constitute a contract for a year, parties must have agreed not only that the contract shall extend as long as a year, but also that it shall expire and end with the expiration of a year.

(2). The fixing of compensation at a yearly rate, of itself constitutes no contract for a year, but is one circumstance which might be taken into consideration in connection with other circumstances in arriving at what intention there was about limiting the life of the contract possessed the parties.

---

WRIGHT, J.:

The judgment rendered at special term has heretofore been ordered reversed for error in the admission of certain testimony which was heard by the trial court in proof of prospective profits. Upon motion of the defendant in error a re-hearing has been had, whereat the duty of determining an additional question presented by the record was urged upon us. Before undertaking the discussion of it, it is announced that the majority of the court are able to find no reason justifying a departure from the opinion heretofore expressed about the admission of the testimony, and are obliged to adhere to it.

The case was tried below upon a theory entertained by the defendant in error, that he had had with the plaintiff in error a contract of employment for the definite term of one year; omitting certain schedules of prices the contract (which was in writing,) is as follows:

"Carthage, Ohio, 4-5, 1892.
"G. H. Burrows,
"Cincinnati, Ohio.
"For the privileges and prices herein named, I will agree to take charge of and run your factory at Carthage, by or on contract work. First, I want full charge of the factory and management of the business so far as manufacturing goes. I mean by this, that I want charge of all merchandise, supplies, etc., or, rather, that I must be consulted as to what we buy, where we buy it, and what should we pay for it.

"Second: I want full charge of all employes. I mean by that, all help employed or paid by you will be subject to my orders, just the same as those employed and paid by me, except in one instance, or rather, one capacity, and that is, that the man or men you may have to inspect or receive the wheels may, or have to have full say and right to demand a good standard grade of work, and I will insist on his not receiving unless it is right, as my responsibility ceases, so far as the work is concerned, when he receives it. I will be personally responsible, and will answer to you for the general management of the business. My aim will be, what benefits the business, benefits me. I don't want you to get the impression that I am trying to dictate everything. You know that every business must have a head, and the Carthage factory is not large enough for more than one. In making this agreement, or contract, I will want you to guarantee me three thousand dollars per year, a proportion of this amount to be paid me each pay day, and a settlement to be made at the end of each year, and if I should make more than the above guarantee, then it be paid me at the end of each year when settlement is made.

"Yours truly,
"P. J. KELLY."

Under this agreement Kelly entered the employment of The Carthage Wheel Company, remaining in that situation for the term of sixteen months, whereupon he was discharged by the president, Mr. Burrows, and thereupon instituted his action for the recovery of the proportionate part of the guaranty for the remainder of the second year, and for profits.

During the trial and at the close of the plaintiff's testimony, the then defendant, (here plaintiff in error) moved the court to arrest the testimony from the jury and render judgment for the defendant upon the ground that the contract was not a contract of definite, certain duration, but was no more than a contract at will. This motion was overruled and exception taken; so that the question is here presented for review, whether or not the contract upon which the suit below was undertaken to be maintained, was a contract of employment for one year.

The evidence shows that there existed no contractual terms saving those set out in Kelly's written proposition, that, as formulated by him, was accepted; and under it his employment was begun.

A year having expired, no additional or amendatory terms were undertaken to be even discussed; there were none. The year expired, and a second year began without the making of further reference to terms of

·employment, and he continued in his situation. If the writing amounts to the setting forth of a contract for a year, it ought to be said that a mere continuance in the relationship created by the original employment constituted an implied renewal of the contract for the full term of a second year. But if the writing does not set forth a contract of hiring for the definite time of a year, it cannot in any wise be maintained that the mere continuance after the expiration of a year raised up a degree of definiteness of duration more explicit or certain than that expressed by the terms of the original writing itself. That is to say, if the writing did not by its terms limit duration, duration can not be said to be limited without a further agreement upon that point.

Counsel urge, that if there is entry under a lease for a term of years, at an annual rental, and the lease becomes void, a holding over creates a tenancy from year to year. This is accurate enough, but not an analogy to the case at bar, unless it be peremptorily assumed that the contract at bar was for a year. Such an assumption ignores the very question which is made. Unless the writing itself sets out a contract for one year, a mere continuance under it, after the expiration of the year, can not give to it a provision which it lacks; that is to say, definiteness of duration. If there be one characteristic of this contract set out more plainly than another, it is the characteristic of absolute absence of limitation of its duration, the characteristic of indefiniteness in point of time. If it be asserted that it was a contract for five or ten, or any other number of years, the assertion is as well able to be maintained, and by the like arguments, as the claim that it is a contract for one year.

It appears from the writing to be manifest that the expectation of both parties was, that the relationship of employer and employe should continue for a long time; how long, nobody knows; how long, nobody has said; how long, nobody has agreed; for how long, nobody has undertaken to make an expression; but it was certainly liable to run for longer than one year, because there was no agreement that it should end with a year. If it was liable to run for longer than one year, it, in the nature of things was not limited to one year, and not a contract for a year. If it be for a time not specified, not limited by terms of agreement then howsoever long or short a time was contemplated or expected, the contract is no more than one at will, for contracts at will are those whereof there appears to be fixed no definite time for coming to an end.

The writing at bar was made by Kelly, and if, at the time he made it, he had in mind anything about limiting the life of the contract to a year, he left it out of his writing. Certainly he did not put it in; no limitation is there; there is nothing susceptible of limitation therein contained. There can exist no contract for a term unless parties have set a time for the term to end; without a definite time fixed for expiration there is no term. Without a time to begin and a time to end there is no term. To constitute a contract for a year, it must be that parties have agreed not only that the contract shall extend as long as a year, but also that it shall expire and end with the expiration of a year. It must be understood to run not only throughout the year but also to end with the year.

The inceptive clause of the contract is this: "For the privileges and prices herein named, I will agree to take charge of and to run your factory at Carthage, by, or on contract work." ·Not for a year, but "on contract work." Not for a time ascertained and fixed, but indefinitely and for no time specified.

The writing sets forth a scale of prices, according to which Kelly was to be paid for wheels which he manufactured. And then in turn follows a schedule of items showing the actual cost to Kelly of manufacturing different kinds and grades of wheels, so that a comparison of figures showed the profits able to be realized out of the enterprise. There were set down there in the writing some statements about the cost to Kelly of hiring an engineer "at fifteen dollars per week, steady work", and two firemen at "twenty-five dollars per week." These items Kelly figured in the cost of manufacture, not by computing a total sum to be paid to the engineer and the firemen for the term of a year, but by charging for the engineer one and one quarter cents for every set of wheels to be made, and for the firemen two cents per set, thus again evidencing the entire absence of any purpose to limit the life of the contract to a year. That there was no idea or purpose to have a contract for one year, is made out in a most convincing manner by the clause of the writing which provides for Kelly's compensation. That clause is as follows: "In making this agreement or contract, I will want you to guarantee me three thousand dollars per year, a proportion of this amount to be paid me each pay day, and a settlement to be made at the end of each year; and if I should make more than the above guarantee, the difference to be paid me at the end of each year when settlement is made." A guarantee of three thousand dollars per year, a settlement at the end of each year, and when profits in excess of the guarantee were made a payment of them to Kelly at the end of each year; these provisions are not only unable to convey the meaning that the contract was limited to a year, but upon the other hand, express with positiveness and certainty that the contract was not intended or expected to be limited to a year.

We are not able to say that parol testimony should have been heard in determining the intention of parties in regard to the time of duration, but if such testimony were proper to be heard, Kelly has given that which would settle the point against him, he having testified (as appears from page 20, of the bill of exceptions) that the

nature of his employment was such that it required the better part of a full year before the organization of his forces could be perfected for satisfactory work. He said: "It takes six months or a year." Q. "When did you get your forces organized?" A. "After the first six months of the first year." Q. "How long after that was it? Eight months?" A. "It was in the sixth or seventh month of the first year." All of which, if competent, would seem to demonstrate that Kelly had no contemplation that he was engaging in a contract which was to end in one year, because he knew that the year would have expired before he was ready to fairly begin the manufacturing.

Counsel for the defendant in error has made earnest contention for the application of the case of Bascom v. Shillito, 37 Ohio St., 431. We are unable to see that this authority has any direct application to the case at bar. The case in the book is one of an entirely oral contract, no part having been reduced to writing. The decision in that case amounts to this: that, where a contract is oral, the jury are entitled to take into consideration every fact and circumstance which transpired, susceptible in nature of throwing any light at all upon the intention of the parties, in regard to the question of duration. The court in that case announced that the fixing of compensation at a yearly rate of itself constituted no contract for a year, but was one circumstance which might, by the jury, be taken into consideration in connection with other circumstances in arriving at what intention about limiting the life of the contract possessed the parties. The case differs from that at bar in this: At bar, the contract was entirely written, and it was for this reason the duty of the court to ascertain the legal significance of, and interpret to the jury the words which were used by the parties. It was the duty of the court to lay down to the jury from the written terms, what contract the parties had made; what obligations they had put upon themselves by using the written words which they did see fit to use. In the case in the book, there was a conflict of testimony concerning what actually transpired between the parties; at bar, there is not only no uncertainty upon the point of what transpired for it is set down in writing, but from the terms used in the writing itself, it is certainly and definitely made known that the contract was unlimited in point of time of duration. By the language which they used it is made out that there was no purpose in the mind of either party to make any limitation of the time for the contract to live.

A more direct analogy to the case at bar may be seen in Prentiss v. Ledyard et al., 28 Wis., 131. The first clause of the syllabus, is as follows:

"An agreement to pay for future services at the rate of a certain sum per year, is not of itself hiring for a year or for any definite time."

In that case the terms of the contract may be gathered from the language of the court (page 133). The defendant in his testimony states the contract as follows:

"After he (the plaintiff) had been in my employment some days, or weeks, we had a conversation. I told him if he would serve me faithfully and would be strictly temperate, I would give him seven hundred dollars, and after six months, if he did not drink and served me faithfully, I would give him nine hundred dollars per year." But as we understand this testimony of the defendant, there was no hiring for a definite period, as for a year, for which he agrees to pay seven hundred dollars, but the agreement was merely, that if the plaintiff continued in the employment of the defendant, serving him faithfully, and kept strictly temperate, he should receive, for the first six months, at the rate of seven hundred dollars a year, and after six months, he was to receive at the rate of nine hundred dollars per year, provided he did not drink and was faithful in his services. The only disagreement between the parties is, whether, while the employment continued, the plaintiff was to receive pay at the rate of nine hundred dollars, or seven hundred dollars per year for his services. Either party, however, was at liberty to terminate the service at any time. No definite period for which the service was to continue having been agreed upon. This, however, renders a consideration of the point made by counsel for the defendant unnecessary. It is admitted that as the foundation of this point the plaintiff agreed to work for the defendant for a definite period, or for an entire year, and that consequently it was essential that the plaintiff show a performance of the contract on his part as a condition precedent to his bringing the action. And we think that the evidence fails to show that this was the contract."

In Orr v. Ward, 73 Ill., 318, the syllabus is this:

"By the terms of the contract between plaintiff and defendant, plaintiff, in consideration of a certain sum for the year 1873, and of another sum for the year 1874, to be paid in semi-monthly installments, agreed to devote his whole time and attention solely to the business of the defendant. Under the contract, plaintiff entered the service of defendant, and continued in it up to June, 1873, when defendant suspended business. Held: In a suit by plaintiff for damages on account of being thrown out of employment, that there was no undertaking on the part of defendant to continue the plaintiff in his employment for any definite length of time, and that plaintiff could not recover.

Mr. Justice Scott, in delivering the opinion of the court, said: "A complete answer to the breach assigned, is, the contract contains no undertaking on the part of Cleveland, Johnson & Co., to retain or continue appellee in the service of the firm for any definite period. We are to judge of the contract by what it contains. Having

reduced it to writing, we must presume the parties have embodied in it their entire agreement. It contains no stipulation the firm will retain appellee for two years, or any other fixed period. Their understanding is, to pay him at a certain rate of compensation if he shall discharge the duties by him to be performed. No doubt it is true, each party contracted on the supposition the business would continue through the space of two years, but appellant's firm did not obligate themselves to continue it for that length of time. As a matter of fact, it terminated much sooner. We have no authority to add to the contract as the parties have made it, enlarging the liability of either one of them, and have no disposition to do so."

This language has full application to the case at bar.

In Proctor & Gamble v. Snodgrass, Administrator, 5 C. C., 547, the contract was as follows:

"Cincinnati, February 6, 1885.
"Messrs. Proctor & Gamble,
"Sirs:
"I propose and agree to superintend your buildings and improvements at Ivorydale, in this county, for a compensation of eight dollars per day, Sundays excepted, and agree to give all my time, skill, and experience to the work, and render a full and correct account of all expenses, without any perquisites commissions except the above sum. Any tickets furnished by you to the works to be deducted at the monthly rates of the same.

"Yours truly,
"S. L. Snodgrass.
"We accept and agree to this proposition,
"Proctor & Gamble."

The trial court, as appears on page 554, charged the jury that the contract was not one from day to day, to be terminated at any time by either of the parties, but in effect was, that Snodgrass was bound to superintend the erection of the buildings to their completion, and that the defendants were bound to allow him to do so. In reversing the judgment for error in this charge, the circuit court said:

"On a careful consideration of this question, we are of the opinion that this holding of the court of common pleas is not correct. There is certainly no express statement in the writing that the superintendence or employment was for any definite period, or until the whole work was finished. Nor do we see that this reasonably can be implied from the language used. We have no doubt but that both parties to the contract expected that the employment of Mr. Snodgrass would continue for some time. He was to give all his time, skill and experience to the work of superintendence, and he was by the original contract to receive as his compensation eight dollars per day, also, while his services under this arrangement were rendered. But the point of difficulty is this: How can it be said for these parties that the contract of

Snodgrass was to continue until the buildings and improvements were completed, when they, themselves, had not said so? * * * How then, looking at the writing in the light of this evidence, can it be said that the contract was to continue until the improvements were finished? Does it not rather appear that they had declined to make stipulations which might bind them for many years, the one to serve and the other to receive and pay the stipulated price for such services? If they had desired to do this, it could have been easily done, and then, we think, there could have been no doubt but that it would have been binding upon both; and if the plaintiffs were discharged without sufficient reason that the defendants would have been liable for the damages resulting to him from their breach of the contract. But where the contract does not in express terms, or by fair implication fix the time for which the employment is to continue, it must be held to be subject to be terminated at the pleasure of either of the parties."

Also, Coppin v. Landes, 46 Penn. St., 426. The syllabus is as follows:

"Where one as agent for another contracts to sell the lands of the latter, in consideration of one-half of the net proceeds of the sales, and there is no stipulation in the contract as to the duration of the employment, the principal has a right to terminate it at any time, and to discharge the agent from his services without notice."

Upon page 431, the court said:

"There is nothing said in regard to the time during which the agreement should continue, and nothing in its language to define the duration of the services of the plaintiff, or of his employment by the defendant. This the contract and parties seem to have left out of consideration, or at least, failed to make it a subject of covenant obligation. It may be, he never was willing to bind himself for any definite period. The scheme was an experiment. The plaintiff might prove inefficient, or, in other respects unsuited to the agency, or the enterprise might prove unsuccessful and profitless, and drag its slow length along for many years. From its very nature it was of uncertain duration. The lands might be sold in a month, or remain unsold at the end of a generation. Large sales might be made in one year, and none at all in the next. All this the parties knew when they entered into the agreement. It is easy, therefore, to conceive a motive for the refusal by the plaintiff to fix any time during which he should be bound to continue in the agency, and equally easy to find a motive for the defendant's refusal to agree to employ the plaintiff for any stipulated period. It is evident then, that were we so to construe the agreement as to hold it obligatory upon the one party to employ, and upon the other to serve during any period, we should be in danger of imposing liabilities which both parties purposely avoided assuming. And if it be admitted that

neither of the parties contemplated a severance of the relation formed by the contract at the will of the other party, it does not follow that we are at liberty to treat the agreement as containing a covenant against it."

We are satisfied that the contract was not one of a hiring for a year, nor of a hiring for any ascertained period, but was a contract at will. It follows, therefore, that the court below erred in overruling the motion of the plaintiff in error to withdraw the evidence from the jury and render a judgment in its favor. For this reason, and for error in the admission of testimony, we adhere to the judgment of reversal.

Jackson, J., concurs.

Hunt, J., dissents.